state court. But, the 21st section of the bankrupt law (14 Stat. 526,) re-enacted in section 5106 of the Revised Statutes, provided, that "no creditor whose debt is provable under this act shall be allowed to prosecute to final judgment any suit at law or in equity therefor against the bankrupt, until the question of the debtor's discharge shall have been determined; and any such suit or proceeding shall, upon the application of the bankrupt, be stayed, to await the determination of the court in bankruptcy on the question of the discharge, provided there be no unreasonable delay on the part of the bankrupt in endeavoring to obtain his discharge, and provided, also, that, if the amount due the creditor is in dispute, the suit, by leave of the court in bankruptcy, may proceed to judgment, for the purpose of ascertaining the amount due, which amount may be proved in bankruptcy, but execution shall be stayed." Upon the revision of the statutes the power to issue the writ of injunction, necessarily implied in this section, was provided for in the re-enactment of the prohibitory statute of 1793, by introducing the words, "except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." It is argued, on behalf of the complainant, that this is to be construed as meaning "under circumstances," or "upon a state of facts," where, by a law relating to bankruptcy, the stay by injunction is authorized; that the present is such a case; that the act of 1875 having given the circuit court jurisdiction without regard to the citizenship of the parties, in suits in equity where the matter in dispute arises under the bankrupt law, the intention was to give the court full equity powers in such cases; and that the court can issue the injunction, because, upon the facts shown, the case is one in which a stay is allowed under the bankrupt law. There would be great force in the argument, if the power given in the bankrupt law were a general enactment authorizing a stay of suits in state courts, without anything to indicate that the power thus given was exclusively conferred on the district court sitting in bankruptcy. The section in question, however, (5106) in so far as it authorizes the issue of an injunction, has been held to be peculiarly addressed to the district court sitting in bankruptcy. In re Rosenberg [Case No. 12,054]. In that case, Judge Blatchford says, that the stay provided for is to be, and is, in practice, granted by the bankruptcy court. It is evidently one of those "things to be done under and in virtue of the bankruptcy," which, by section 4972, are exclusively committed to the bankrupt court, so far as they are committed to a court of the United States; and section 5106 contains in itself enough to show the same purpose. Therefore, the argument for the complainant fails because this is not the case mentioned in the exception, the laws relating to bank-

ruptcy having expressly limited the power to issue the injunction not only to certain circumstances which may exist here, but to a court and a proceeding other than the present. The complainant's case is one which appeals very strongly to the court for the exercise of any powers which it is able to exercise for his relief, since this creditor is proceeding to obtain an advantage over other creditors, in direct violation of the composition agreement by which it is bound, but it cannot have an injunction in this suit. Perhaps the complainant can be relieved in the district court for this district, under its power as a court of bankruptcy, ancillary to the jurisdiction of the district court for the district where the original petition was filed. See Sherman v. Bingham [Case No. 12,762]; Lathrop v. Drake, 91 U. S. 516. The motion is denied.

[For subsequent proceedings in this litigation, see Case No. 14,034, and 11 Fed. 463.]

## Case No. 14,036.

### In re TIFT.

[17 N. B. R. 421.] [1]

District Court, E. D. New York. March 21, 1878.

BANKRUPTCY—EXAMINATION OF BANKRUPT—POWER OF REGISTER TO LIMIT.

The register has not the power, by an announcement beforehand, to fix a limit of time within which the examination of the debtor must be concluded, without regard to the nature of questions sought to be put, or the interest with which the same are propounded.

[In the matter of Alanson H. Tift, a bankrupt.]

Charles Harris Phelps, for opposing creditors.

A. C. Aubrey, for bankrupt.

BENEDICT, District Judge. The following conclusions are sufficient to dispose of the questions presented by the certificate of the register in this case. Where, in composition proceedings, the debtor attends at the first meeting of creditors, he can, at the instance of any creditor entitled to vote upon the composition resolution, be required to answer any proper question in respect to the particulars required to be furnished the meeting in his statement—i. e., the character and value of his assets, the amount and description of his debts, and the names and addresses of the creditors to whom such debts respectively are due. These inquiries are to be conducted under the direction of the register, who, by general order 36, is required to hold and preside at the meeting, and to report to the court the proceedings thereof, with his opinion thereon. A necessary incident to the power to conduct the inquiry is the power to prevent the examination from being conducted for the purposes of delay or vexation. The inquiry, although had at a meeting of creditors, is, nev-

[1] [Reprinted by permission.]

ertheless, a proceeding before a register, within the meaning of section 5009, and accordingly any issue of fact or of law raised and contested by any creditor in the course of such inquiry, may be adjourned into court for decision by the judge, in the manner prescribed by section 5009. A question of law is raised when under, objection, the register determines a certain course of examination to be frivolous and calculated needlessly to occupy time, and upon that ground refuses to permit the creditor to continue the examination. The proper mode of presenting such a question would be to allow a reasonable number of interrogatories to be put in order to show the course of the examination, which questions being excluded, if the register is satisfied that the examination is being continued for the purpose of delay or vexation, would enable the court to determine whether the line of inquiry was such as to justify the conclusion of the register. Of course a limit could properly be put to the number of interrogatories allowed to be propounded for that purpose. Peck v. Richmond, 2 E. D. Smith, 380. The register has not the power, by an announcement beforehand, to fix a limit of time within which the examination of the debtor must be concluded without regard to the nature of questions sought to be put, or the interest with which the same are propounded. In this case, the register, at a certain stage of the proceedings, announced that the examination of the debtor at the instance of a certain creditor must close at a certain hour, and upon the arrival of that hour terminated the examination, upon the sole ground that the hour had arrived at which he had announced that the examination must close. In this I am of the opinion that the register erred. The reason for the action of the register is stated by him to be that the examination was vexatious and not for a legitimate purpose. The examination, as submitted to me, does not enable me to say that the reason assigned has a foundation in fact. I cannot regard the course pursued in the former examination, which is outside of the inquiry commenced on the 11th. It is the latter only that can be considered on this occasion, and while I find in that examination many questions to have been put and answered, to which objections might properly have been made, I find no questions put and excluded which enable the court to say that that examination was vexatious, or for an improper motive. The papers show that that examination was not closed by reason of the nature of the questions being put, but solely because the limit of time fixed for the examination had arrived. In closing the examination upon that ground the register erred.

The other question certified does not arise in the pending examination, and therefore does not require determination at this time.

[For subsequent proceedings in this litigation, see Cases Nos. 14,030, 14,031, 14,029, 14,032, 14,033, 14,035, 14,034, and 11 Fed. 463.]

## Case No. 14,037.

### TIGHLMAN v. WERK.

[Cited in Goodyear Dental Vulcanite Co. v. Willis, Case No. 5,603. Nowhere reported; opinion not now accessible.]

## Case No. 14,038.

### The TIGRIS.

[3 Law Rep. 428.]

District Court, D Massachusetts. Feb., 1841.

QUI TAM ACTION — VESSEL ENGAGED IN SLAVE TRADE — ALIEN LIBELANT — CONDITIONS — WAR — RIGHT OF SEARCH — WHEN ALLOWED IN TIME OF PEACE.

1. The right of search is a belligerent right, and not allowable in time of peace, unless against pirates or other offenders against the law of nations.

2. Where a vessel of the United States was seized by a British cruiser, on suspicion of being engaged in the slave trade, and was sent to the United States in charge of a British officer, and a libel, qui tam, was filed against her by the seizer; it was *held*, that process in rem would not be denied because the libellant was an alien, but would be granted on condition that he entered into stipulation, with sureties, to abide the final decree, and such interlocutory orders as might be made in the premises. Whether the libel could be ultimately maintained—quære.

This was the case of a libel, filed on the 15th of January last, by H. J. Matson, of the kingdom of Great Britain and Ireland, lieutenant in the navy of her Britannic majesty, and commander of her Britannic majesty's brig Water Witch, prosecuting as well for the United States as for himself, against the brig Tigris, of Salem, in this district, and the goods and effects on board said vessel, for a forfeiture of the vessel and her lading for certain alleged violations, on the coast of Africa, on the 7th day of October last, of several statutes of the United States for the suppression of the slave trade; the Tigris being then under command of Nathaniel Frye, of Salem. On notice to show cause why admiralty process should not issue as prayed for by the libellant, Robert Brookhouse and William Hunt, of Salem, asserted owners of the brig and cargo, offered the following objections against the issuing of a warrant of arrest, on the aforesaid libel: (1) Because the libellant had seized and brought said vessel and cargo into this district, by force and unlawful violence, and the same being so seized and brought in by him, was not now liable to this process in behalf of said Matson. (2) Because no offence had been committed on board of said vessel, such as is charged in said libel, and that of this they were ready to make proof. (3) That said libellant was an alien, and was now in a foreign country, and had not appeared in this court by himself, and no one exhibiting or offering any power or authority to act on his behalf, had appeared for him, to sue and prosecute the above libel. (4) That an alien could not sustain a libel qui tam, in the manner of this case.